IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH M. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-269-SLR |
| | ) |
| WARDEN THOMAS CARROLL and | ) |
| FIRST CORRECTIONAL MEDICAL, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

Kenneth M. Smith, Pro Se Plaintiff. James T. Vaughn Correctional Center, Smyrna, Delaware.

Stacey X. Stewart, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Thomas Carroll.

**MEMORANDUM OPINION**

Dated: March 16, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Kenneth M. Smith ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), formerly known as the Delaware Correctional Center, Smyrna, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2) Presently before the court are plaintiff's motion to appoint expert and motion for default judgment as to First Correctional Medical, Inc. ("FCM"), and defendant Thomas Carroll's ("Carroll") motion for summary judgment. (D.I. 22, 29, 39) For the reasons set forth below, the court will deny plaintiff's motions for appointment of an expert and for default judgment and will grant Carroll's motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, who suffers from a scalp condition, alleges that defendants are deliberately indifferent to his serious medical needs. In July 2005, plaintiff was diagnosed with dissecting cellutitis of the scalp.[1] He alleged in his complaint that he was taken to a dermatologist in May 2006 and was told that surgery was required. (D.I. 2) Plaintiff also alleged that FCM was to obtain approval for the surgery from its regional office. According to the complaint, plaintiff constantly wrote to Carroll, but was ignored.

Plaintiff's medical records indicate that he has had an ongoing scalp problem for many years. (D.I. 41, ex. B)[2] During the relevant time period, plaintiff submitted a

---

[1] A chronic folliculitis of the scalp. *The American Heritage Stedman's Medical Dictionary* 234 (2d ed. 2004).

[2] Except as otherwise indicated, the facts regarding medical treatment are taken from D.I. 41.

request for medical treatment on July 11, 2005 complaining that the growth on his scalp was spreading, bleeding, and painful. He was seen on July 15, 2005. He was taken to an outside dermatologist on August 2, 2005 and diagnosed with dissecting cellulitis of the scalp with keloidal formation.[3] Plaintiff was injected with Kenalog,[4] prescribed antibiotics and given topical medication. Medical notes indicate that the dermatologist "would like to see [plaintiff] in three weeks for monitoring of the problem." Plaintiff submitted a medical request on August 16, 2005, complaining that he was waiting for his prescribed medication and that he was to return for a follow-up within a week. Plaintiff was seen in medical on August 17, 2005, medications were ordered as recommended, and plaintiff was to return for a follow-up in four to six weeks. Plaintiff's scalp was examined on December 23, 2005, and the medical plan indicates that, again, he be examined by a dermatologist. By February 6, 2006 plaintiff's scalp appeared improved with no active infection noted. Plaintiff was examined by another dermatologist on May 8, 2006 who diagnosed folliculitis keloidalis nuchae.[5] Plaintiff was

---

[3] A keloid is a red, raised formation of fibrous scar tissue caused by excessive tissue repair in response to trauma or incision. *The American Heritage Stedman's Medical Dictionary* 436 (2d ed. 2004).

[4] Kenalog intra-articular/intramuscular injection contains the active ingredient triamcinolone. Triamcinolone is a synthetic steroid that has an anti-inflammatory effect. It is used to decrease inflammation in various different diseases and conditions. http://www.netdoctor.co.uk/medicines.

[5] Folliculitis keloidalis nuchae is a chronic skin condition involving the back of the neck and scalp. http://www.skinsite.com/info_folliculitis_keloidalis_nuchae.htm.

administered Kenalog and prescribed a daily antibiotic. As of September 12, 2006, he remained on an antibiotic regimen.

Plaintiff testified at his deposition that he was told there is no treatment for his condition. (D.I. 40, ex. A, 32) He also testified, contrary to the allegations contained in the complaint, that he was never told by a physician that the condition required surgery. (*Id.* at 42) Plaintiff testified that he named Carroll as a defendant because letters were written to Carroll on plaintiff's behalf, but he received no responses. (*Id.* at 19) There is no other reason he named Carroll as a defendant. (*Id.*) Plaintiff could not say what was in the letters, but basically he was trying to get some treatment for his scalp. (*Id.*)

Carroll moves for summary judgment on the grounds that plaintiff cannot establish an Eighth Amendment violation against him and he is immune from liability. Plaintiff filed no response to the motion for summary judgment despite being given an extension of time. (D.I. 45)

## III. DISCUSSION

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court may not weigh the evidence or determine the truth in the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all

3

reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While plaintiff did not respond to the motion for summary judgment, the court will not grant the entry of summary judgment without considering the merits of Carroll's unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## B. Personal Involvement

Carroll argues that he lacks the requisite personal involvement to invoke liability under § 1983. The complaint alleges that plaintiff wrote numerous letters to Carroll regarding his scalp condition, to no avail. The record, however, does not contain a single letter to Carroll from plaintiff.

In order to prevail under § 1983, plaintiff must establish that Carroll had personal involvement in the alleged wrongs since liability cannot be predicated solely on the operation of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode v. Dellarciprete, supra.* Personal involvement may be shown by either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Id.* Plaintiff must show: "1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Hunter v. Schouppe*, Civ. No. 06-1291, 2007 WL 4554251 (W.D. Pa. 2007) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Carroll argues that there is no evidence that he was personally involved in the alleged wrongdoing. Plaintiff testified that he has never met Carroll and, despite his allegations that he wrote to Carroll, plaintiff produced no evidence to rebut Carroll's position. Indeed, the court has reviewed the entire record and found nothing to support

the allegations directed towards Carroll. Plaintiff has failed to point to specific facts showing there is a genuine issue for trial.

Even viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has not provided evidence that Carroll had personal knowledge of, or in any way acquiesced to, plaintiff's situation. Therefore, the court will grant Carroll's motion for summary judgment.[6]

### C. Expert Witness

Plaintiff moves for appointment of an expert to evaluate his medical condition. (D.I. 22) Plaintiff does not indicate under what rule he proceeds, but the court assumes it is Fed. R. Civ. P. 35. Rule 35, however, does not vest the court with authority to appoint an expert to examine a party wishing an examination of himself. Instead, under appropriate circumstances, it allows the court to order a party to submit to a physical examination at the request of an opposing party. Additionally, plaintiff does not indicate who will bear the cost for the proposed examinations. Regardless, no civil litigant, even an indigent one, has a legal right to such aid. *Brown v. United States*, 74 F. App'x 611, 614 (7th Cir. 2003), *cert. denied*, 540 U.S. 1132 (2004) (not reported). For the above reasons, the court will deny the motion for appointment of an expert.

### D. Default Judgment

On March 31, 2008, the clerk of the court entered a default in appearance against FCM. (D.I. 25) Thereafter, plaintiff filed a motion for default judgment and requested a hearing on damages. (D.I. 29) In turn, the court ordered plaintiff to submit

---

[6]The court will not address the other issues he raises in support of summary judgment having found lack of personal involvement on behalf of Carroll.

6

an affidavit telling the court, in detail, what relief he seeks against FCM and the grounds upon which he bases his request for relief. (D.I. 34) Plaintiff advises that he seeks injunctive relief in the form of a current assessment by a dermatologist, if surgery is necessary that it be performed within sixty days, and any other treatment the dermatologist deems proper, as well as $20,000 in punitive damages for pain and suffering since October 1998 when he began his attempts to secure medical treatment. He provides no other grounds for relief.

Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984). The entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

The complaint makes the general allegation that plaintiff has sought medical treatment since October 1998.[7] The specific allegations begin in July 2005 when plaintiff was seen by a dermatologist. The court takes judicial notice that FCM provided

---

[7]The complaint was filed on May 21, 2007 as determined by the mailbox rule for prisoner filings. *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Deckers*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). The original complaint was signed on May 21, 2007. Therefore, the court concludes that it was filed on the date it was signed, the earliest date possible that it could have been delivered to prison officials in Delaware for mailing.
  In Delaware, § 1983 claims are subject to a two-year limitations period. *See* Del. Code Ann. tit. 10, § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Accordingly, plaintiff's claims prior to May 21, 2005 are time-barred by the limitations period. *See Mattis v. Dohman*, 260 F. App'x 458 n.3 (3d Cir. 2008) (not reported).

contract medical services to Delaware prisons from July 1, 2002 through June 30, 2005. *Francisco v. Correctional Med. Sys.*, Civ. No. 03-499-JJF, 2007 WL 896190, at *1 (D. Del. Mar. 22, 2007). Correctional Medical Services, Inc. began providing medical services to Delaware prisons on July 1, 2005 and, at present, is the contract medical service provider. *Francisco v. Correctional Med. Sys.*, 548 F. Supp. 2d 128, n.2 (D. Del. 2008). It, however, is not named as a defendant in this action.

FCM appears to have a litigable defense to this action inasmuch as it was not the medical provider during the time-frame alleged in the complaint. Accordingly, the court exercises its discretion, will deny plaintiff's motion for default judgment, and will dismiss the claims against FCM.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will grant Carroll's motion for summary judgment, will deny plaintiff's motion for appointment of an expert, will deny plaintiff's motion for default judgment against FCM, and will dismiss the claims against FCM. (D.I. 22, 29, 39) An appropriate order will issue.